(Court of Appeal, Parish of Orleans.)

LOUISIANA DISTILLERY CO., LTD., vs. M. L. AND T. R. R. AND S. S. CO.

Appeal from Civil District Court, Division "D."

W. B. Grant, for Plaintiff and Appellee.

Denegre, Blar and Denegre, and Victor Leovy, for Defendant and Appellant.

1. A railroad built entirely on the lands of two adjoining plantations for the exclusive use and convenience of both, (their respective sugar houses, or factories, being the terminal of the road) is a private and not a public carrier.

2. The rates established by the State Railroad Commission for the carriage of freight applies only to the carriage by a public or common carrier.

3. The order of the State Railroad Commission establishing a freight rate on low grade molasses "from all plantation points to New Orleans," contemplates only the regulation of freight rates from all plantation points on the line of the railroad doing the carriage.

4. HENCE: If the plantation whence this freight is shipped is distant from the line of a railroad and the shipper is necessarily obliged to employ other carriage in order to deliver the freight at the station of the terminal or delivering carrier, the cost of such initial carriage is not comprehended in the rate which the terminal or delivering carrier is permitted to charge, under the established rates, from the point of delivery, on his line, to destination.

MOORE, J. Bonvillian Bros., who are alleged by the plaintiff to have been its agents, forwarded to New Orleans at various times running from the 1st day of August, 1904, to the 29th day of that month and year, thirteen tank cars belonging to, and furnished by, the plaintiff, and loaded with molasses made on the Argyle plantation situated in the Parish of Terrebonne; the

27

molasses having been purchased in New Orleans by the plaintiff from Levert, Burguieres & Co., to be delivered on board tank cars at the plantation factory; the cars and their contents to be hauled to New Orleans.

The haul from the Argyle plantation factory, which is situated about three miles off from the line of the defendant's road, to the City of New Orleans, is first over a railroad about three miles in length whose terminal are the respective factories of the Argyle plantation and the Southdown plantation immediately adjoining each other; and secondly, by transfer to the road of the defendant company whose road passes South'down, at which point it has a station, and where the transfer is made, and thence on by the latter road to destination.

Upon the transfer of these tank cars being made at Southdown to the defendant company, bills of lading therefor were issued by the Conductor of the defendants' freight train who accepted the transfer of the tank cars to his road, and the bills of lading, after being signed by Bonvillian Bros., as the shippers, who thus accepted the terms and conditions thereof, were delivered to Bonvillian Bros. who transmitted them to the plaintiff. Each bill of lading contained across its face this writing: "advance charge $8.00"; and the printed condition thereof is "* * That all charges entered on this Bill of Lading, and such as may necessarily accrue en route, are guaranteed." It appears that this "advance charge" of $8.00, refers to a charge of $8.00 per car made by the railroad running between the two sugar factories as stated, for hauling each tank car, from the Argyle plantation to the Southdown station of the defendants road; and it is shown that this railroad is and constitutes no part of the defendants road or system but is purely and simply a plantation road, owned, operated and conducted by the owners of the Southdown plantation who employ their own cars, engines, engineers and men in its operation; that it was originally intended for the sole use and benefit of the Southdown plantation but that upon the solicitation of the

28

Bonvillian Brothers who were the former owners of Argyle and who, now that it is owned by a limited corporation, are still the real parties in control, as the holders and owners of the stock, the road was run on to the adjoining plantation (Argyle) so as thus to connect the two factories by rail; Argyle granting the right of way to the road, in consideration of its freight being hauled at certain stipulated figures for each article of merchandise; eight dollars per tank car of molasses being stipulated for the price of the haul from Argyle to Southdown station, the inital terminus of the road.

It is this item of $8.00 per car, charges for carriage over this road that is the subject of this controversy. When the tank cars reached New Orleans the defendant company presented its bill for freight charges over its own road from Southdown to New Orleans, the correctness of which was not disputed, but protest was made to the payment of the charges of the Southdown road which were included in the bill rendered. As the defendant road had received the cars burdened with this charge thereon from the Southdown road, had assumed liability to collect and pay over same, and as the bills of lading had been issued with this charge written thereon and accepted by the shippers, the defendant declined to make delivery until this charge was paid. Payment however was subsequently made, without prejudice to the rights of the plaintiff; the tank cars were delivered and this suit followed for the recovery of the amount thus paid.

The sole objection urged to the right to make this charge of $8 00 per car is that it is in excess of the rate established by the Railroad Commission of this State, the rate thus established being six cents per hundred pounds on low grade molasses, which this shipment was, "from all plantation points to New Orleans," to quote the language of the order of the Railroad Commission.

In our opinion the plaintiff Company cannot recover the amount thus paid.

Pretermitting, for the moment, the questions whether the State

Railroad Commission's fixation of rates as those to be charged by railroads can apply to a mere plantation railroad, one which may not be considered a public or a common carrier; and whether, in any event, the question of the proper rate which that railroad may or may not charge can be determined when it is not a party to this suit, both of which propositions are urged by the defendant in opposition to the plaintiff's contention, there is sufficient on the face of the contracts of carriage, as evidenced by the bills of lading, coupled with the facts and circumstances attending the transaction, to defeat the plaintiff.

It is shown conclusively that the defendant company did not undertake any contract of carriage from Argyle plantation to New Orleans, nor do the bills of lading so state, although they appear to be dated at Argyle. They were prepared by the shippers and signed by them and when the tank cars reached Southdown station they were then transferred to the defendants' road, the bills of lading being then presented and signed by the defendants' representative at that point. At this point, (Southdown) the defendants' employment and contract began; the carriage from Argyle to that point having been made exclusively by the Southdown plantation road, which road the defendant company has no control of, or interest in, whatsoever. The employment of this plantation road was made directly by the shippers with the owner of this road under and by virtue of a specific agreement and understanding existing between the owners of Southdown and Argyle plantations respectively in consideration of the right of way being given over Argyle plantation, and at a rate stipulated and agreed on between them for each particular service; the rate charged in the instant particular being that agreed on for such service in the general agreement existing between the two plantations. This agreement and this rate the shippers, Bonvillain Bros., were fully advised of, having been the former undivided owners of Argyle and parties to the agreement, and now the owners of the stock in the Limited Corporation in whose name Argyle is now operated. As the shippers they received

30

at Southdown the bills of lading from the defendant company with the writing across the face of each that an advance charge of $8.oo per car was due thereon to the plantation road, and that the defendant company was liable for the collection and remittance of that amount for each car, to the owners of the plantation road and they signed these bills of lading themselves under the declaration printed thereon that "The terms and conditions of this bill of lading are understood and accepted." In all these transactions concerning this particular shipment Bonvillian Bros., not only appear as the shippers and therefore a direct party to the contract of affreightment, but also, as is alleged in the petition. as plaintiff's agent. The latter is therefore doubly bound on the contract; first as the assignee of the bills of lading he is bound as was his assigns; and secondly as the principal in the transaction he is bound by the acts of his agents, Bonvillian Bros. Their acts were the plaintiff's acts, and their knowledge was likewise the plaintiff's.

Neither can the order of the State Railroad Commission establishing a rate of "six cents per hundred pounds on low grade molasses from all plantation points to New Orleans," be invoked to plaintiff's advantage.

It is clear that this order contemplates only the fixing of rates to be charged from "all plantation points" on the line of the particular road doing the carriage. It certainly was never intended that this rate should cover the entire cost of transportation, no matter how far distant a "plantation point" was from the line of a railroad to which the freight intended for carriage was delivered; and regardless of what means might have to be employed to convey the freight from the plantation to the railroad station, whether by boat, by wagon, or, as in the instant case, by means of a private railroad.

The meaning of the rule is that from whatever plantation point along the line of its own road a railroad may receive freight of the character in question it shall charge the rate stipulated for

31

carriage, therefrom to New Orleans. If, however, the plantation from which the freight is to come is distant from the railroad and the shipper is compelled to employ other carriers or other means of carriage in order to reach the line of the railroad which is to carry the freight to New Orleans, it was never contemplated that the cost of such carriage was to be deducted from the freight rate which the last carrier was permitted to charge for hauling the freight to New Orleans.

If this were otherwise the order of the Commision would be arbitrary, unjust and absolutely illegal.

As already stated the railroad from Southdown plantation to the Argyle plantation is purely a private or plantation road. It is in no sense of the term a public or common carrier. It may refuse to carry freight for any one. Indeed it is confined in its territory to the two plantations which are continuous, running but a short distance on the Argyle plantation up to the factory on that place, and if it were not for the agreement with the latter plantation, which was the consideration for the right of way granted thereon, it might legally refuse to carry freight for that plantation. It may have none of the benefits and advantages of a common carrier, as for instance the right of eminent domain, hence it carries with it none of the burdens and obligations of a common carrier as such, and is, therefore, beyond the pale, as private property employed for private purposes, of regulation by the State Railroad Commission. The order fixing the rate as stated cannot therefore be applied to this railroad.

Besides all this, whatever cause of complaint the plaintiff may have against this freight rate charged by this plantation road, it should be directed against that road in a suit directly against its owners or one in which they are parties so that they can be thus afforded an opportunity to protect their rights. The defendant company received the freight with the charges burdened thereon from the shippers, and with the latters knowledge that it would not and could not deliver the freight until these charges were paid.

32

It has no interest in them whatsoever. No judgment which might be rendered against it could protect it if sued for these charges by the plantation railroad. The latter and it alone is the one with whom the plaintiff should have litigated its demands.

For these reasons we conclude that our esteemed brother of the District Court erred in the judgment which he rendered in favor of the plaintiff and thercfore the said judgment is hereby reversed, revoked, set aside and annulled and plaintiff's suit is dismissed at its costs in both courts.